UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY MCCLURE,<br><br>        Plaintiff,<br><br>    v.<br><br>PANZURA, LLC,<br><br>        Defendant. | Case No. 24-cv-02966-EKL<br><br>**ORDER DENYING MOTION TO TRANSFER, GRANTING MOTION TO DISMISS IN PART**<br><br>Re: Dkt. Nos. 15, 20 |

This employment action arises from Plaintiff Larry McClure's termination as the chief financial officer of Defendant Panzura, LLC ("Panzura"). Panzura moves to transfer the case to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a). Mot. to Transfer, ECF No. 15. Panzura also moves to dismiss for failure to state a claim. Mot. to Dismiss, ECF No. 20. The Court carefully reviewed the parties' briefs and heard argument on November 13, 2024. For the following reasons, the motion to transfer is DENIED and the motion to dismiss is GRANTED in part and DENIED in part.

I.   **BACKGROUND**

Panzura makes software "for businesses to help [them] manage and move data." Compl. ¶ 17, ECF No. 1-1.[1] McClure was hired by Panzura's former chief executive officer, Jill Stelfox ("CEO Stelfox"), in early 2022. *Id*. ¶ 18. He served as Panzura's chief financial officer from "approximately March 16, 2022, through January 16, 2024, when [Panzura] terminated him." *Id*. ¶ 19. McClure claims that Panzura terminated him in retaliation for whistleblowing against

---

[1] The facts in this background section are taken from the complaint and assumed to be true for purposes of the motion to dismiss. The facts discussed below in connection with the motion to transfer are drawn from the declarations and exhibits submitted by the parties.

Panzura's chief revenue officer, Dan Waldschmidt, for alleged misuse of company funds and for engaging in an improper quid-pro-quo sexual relationship with a junior female employee.

Waldschmidt co-founded Panzura with CEO Stelfox. *See id*. ¶ 32. Waldschmidt became the company's chief revenue officer – the head of the company's sales division – "in or around May 2020." *Id*. ¶ 22. He owns a small stake in the company and holds a position on the company's board of directors. *Id*. Panzura is majority-owned by the venture capital firm Profile Capital Management, LLC, and two of its partners – Ben Chereskin and Ryan Varavadekar – also serve on Panzura's board. *Id*.

McClure alleges that, in or around late 2022, he became aware that Waldschmidt was "talking about separating from his wife." *Id*. ¶ 26. McClure further alleges that, around that same time, Waldschmidt went on expensive trips to Saudi Arabia with a junior female employee using company funds. *Id.* ¶ 27. McClure was concerned that these trips had no legitimate business purpose because Waldschmidt and the junior female employee "stayed longer than made sense for the business" and failed to secure any deals. *Id*. McClure's suspicions increased when, upon returning from Saudi Arabia, the junior female employee "was talking about leaving her husband." *Id*. McClure believed that "there may have been a sexual relationship" between Waldschmidt and the junior female employee, "which involved a power differential and possibly coercion," because the junior female employee worked on the company's strategic sales team and reported directly to Waldschmidt. *Id*. McClure reported these concerns to CEO Stelfox. *Id*. Waldschmidt took a leave of absence in or around February 2023 and returned in April 2023 as chief transformation officer – a role that "had no budget authority and no direct reports." *Id*. ¶ 28.

McClure's concerns persisted when Waldschmidt allegedly intervened on behalf of the junior female employee to prevent her from being laid off and to increase her compensation package. In or around May and June 2023, the junior female employee was identified for inclusion in a round of layoffs. *Id*. ¶ 30. Waldschmidt "petitioned" CEO Stelfox and McClure not to lay her off, which McClure "found highly irregular" given that the junior female employee no longer reported to Waldschmidt. *Id*. Then, in or around August 2023, Waldschmidt "demanded" that McClure provide him with all employee sales compensation agreements to help the junior

2

female employee "increase her compensation." *Id*. ¶ 32. McClure was concerned that Waldschmidt was engaging in a "quid-pro-quo sexual relationship" that could "violate the law," and he reported his concern to CEO Stelfox. *Id*.; *see also id*. ¶ 35 (alleging that McClure believed "Waldschmidt's conducting a sexual relationship with a subordinate employee on company time and using company funds" and "attempts to secure higher compensation" for the junior female employee "could violate the law").

In December 2023, during company meetings in San Jose, California, Waldschmidt and the junior female employee "petitioned" McClure to give the junior female employee "a more generous commissions package than her male peers." *Id*. ¶ 36. McClure declined these requests because the junior female employee's work performance did not merit a pay increase. *Id*. To the contrary, McClure and CEO Stelfox recommended terminating the junior female employee "because she had not driven any significant revenue." *Id.* ¶ 38. On several occasions during these company meetings, Waldschmidt "expressed anger and frustration" with McClure and CEO Stelfox "for refusing to approve his desired pay increase" for the junior female employee. *Id*. ¶ 37. At the same time, McClure learned of new evidence from human resources director Shelby Stelfox that Waldschmidt and the junior female employee "had been having meals together on Panzura's dime, for no discernible business purpose." *Id*. ¶ 39. McClure again reported his concerns of preferential treatment to CEO Stelfox, calling it a "lawsuit waiting to happen." *Id*.

On or around December 7, 2023, during the company meetings in San Jose, CEO Stelfox confronted Waldschmidt about his alleged interference in the junior female employee's compensation negotiations "and his attempt to make her compensation unequal and unfair." *Id*. ¶ 40. McClure "observed Waldschmidt become agitated and angry at CEO Stelfox" during the confrontation. *Id*. According to the complaint, "Waldschmidt made the decision to retaliate against CEO Stelfox and McClure" after this confrontation. *Id*. ¶ 43. During this same period, McClure "contacted a lawyer at Jones Day for advice regarding Waldschmidt's request to pay the [junior female employee] more than her male comparators" because Plaintiff "feared that such a compensation change would violate the law." *Id*. ¶ 41.

3

1    In January 2024, Waldschmidt began to "flaunt his sexual relationship" with the junior

2 female employee by "touching her in ways visible to employees, at company events, disappearing

3 together in the middle of the day, and causing employees to wonder whether they were sleeping

4 together." *Id*. ¶ 44. On January 11, 2024, CEO Stelfox confronted Waldschmidt about the sexual

5 relationship and told him that his alleged "misuse of company funds to support the affair was

6 fraudulent and potentially illegal." *Id*. ¶ 45. Waldschmidt allegedly admitted to the sexual

7 relationship. *Id*.

8    On January 12, 2024 – the day after this confrontation – McClure and CEO Stelfox were

9 summoned to Chicago by Panzura's board members. *Id.* ¶ 46. On January 18, 2024, McClure and

10 CEO Stelfox traveled to Chicago and made several presentations to Panzura board members Ryan

11 Varavadekar and Ben Chereskin. *Id*. ¶ 47. These presentations detailed Panzura's strong financial

12 performance in 2023. *Id.* ¶ 48. After the presentations concluded, Chereskin told CEO Stelfox

13 that her employment with the company was terminated. *Id*. ¶ 51. Chereskin reportedly told CEO

14 Stelfox that "she had done nothing wrong, and Panzura wanted to move in another direction." *Id*.

15 ¶ 51. Panzura also terminated Stelfox's husband (Steve) and daughter (Shelby), who both worked

16 at the company. *Id*. ¶ 54. Before leaving the meeting, CEO Stelfox told Chereskin about

17 Waldschmidt's alleged misconduct. *Id*. ¶ 51. Chereskin "became angry and agitated" and "yelled

18 at Stelfox." *Id*. Chereskin then told McClure that he was terminated, too, and that "it ha[d]

19 nothing to do with [his] performance," but rather that Panzura needed "to clean the slate for a new

20 management team." *Id*. ¶ 55. Six days after Stelfox and McClure were terminated, Panzura

21 announced that Waldschmidt would serve as Panzura's new CEO. *Id.* ¶ 60. As CEO,

22 Waldschmidt promoted the junior female employee. *Id*. ¶ 61.

23    On March 25, 2024, McClure filed this action in Santa Clara County Superior Court. *See*

24 Compl. On May 16, 2024, Panzura removed the action to federal court, ECF No. 1, and the case

25 was reassigned to this Court on August 20, 2024, ECF No. 29. McClure asserts seven causes of

26 action: (1) retaliatory discharge in violation of California Labor Code § 1102.5(a)-(c);

27 (2) retaliation in violation of the California Fair Employment and Housing Act ("FEHA"), Cal.

28 Gov. Code § 12940(h); (3) failure to prevent retaliation in violation of FEHA, Cal. Gov. Code

4

§ 12940(k); (4) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (5) breach of the implied covenant of good faith and fair dealing; (6) wrongful termination in violation of public policy; and (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

Panzura moves to transfer this action to the Eastern District of Texas and to dismiss the complaint for failure to state a claim. The Court addresses the motions in turn.

## II. MOTION TO TRANSFER

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[T]he district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The court may consider the following factors, among others, when determining whether transfer would promote the convenience of the parties and witnesses, and the interests of justice:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. The "presence of a forum selection clause" and "the relevant public policy of the forum state, if any" are also significant factors that should be weighed. *Id.* at 499 & n.21.

The movant bears the burden to show that the case could have been brought in the proposed transferee district, and that the convenience and justice considerations clearly favor transfer. *See, e.g.*, *Alul v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2016 WL 7116934, at *2 (N.D. Cal. Dec. 7, 2016) ("The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer." (citing *Commodity Futures*

5

*Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979))).  The case should not be transferred if the result is merely to shift the inconvenience from one party to another.  *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

### B. Discussion

The parties agree that this action could have been brought in the Eastern District of Texas. Mot. to Transfer at 6; Opp. to Mot. to Transfer at 14-15, ECF No. 21 ("Plaintiff does not dispute that the Eastern District of Texas is a district where this action might have been brought.").  Thus, the only question for the Court is whether the convenience of the parties and witnesses and the interests of justice favor transfer.  The Court addresses the most significant factors, based on the parties' extensive submissions, below.[2]  The Court concludes that Panzura has not met its burden to show that these factors clearly favor transfer of this case to the Eastern District of Texas.

#### 1. The plaintiff's choice of forum

McClure chose the Northern District of California as his preferred forum.  Typically, the plaintiff's choice of forum is given substantial weight and deference.  *Decker Coal*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.").  However, this deference diminishes when the plaintiff is not a resident of the chosen forum, and where the forum lacks a significant connection to the events alleged in the complaint.  *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." (citations omitted)).

---

[2] Three months after briefing closed, McClure sought leave to file a 12-page sur-reply, contending that Panzura improperly submitted new declarations with its reply brief.  ECF No. 36.  The Court DENIES McClure's motion because it is untimely, and it contains extensive argument.  *See* Civil L.R. 7-3(d)(1) (objections to reply evidence are due "not more than 7 days after the reply was filed" and "may not include further argument").  The sur-reply is also improper because Panzura's reply declarations were permissible responses to evidence that McClure submitted with his opposition.  *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1179 (N.D. Cal. 2023).

Here, McClure's choice of forum should be given some weight and deference. It is undisputed that McClure currently resides in Alabama, which diminishes the weight given to his choice of forum. McClure Decl. ¶ 2, ECF No. 21-2. However, this District has a significant connection to the events alleged in the complaint. McClure "spent approximately 25% of [his] time working from" Panzura's San Jose office. *Id.*; *see also* Compl. ¶ 21.[3] Several of the key events underlying McClure's claims allegedly occurred in San Jose. For example, McClure alleges that Waldschmidt interfered with the junior female employee's compensation during company meetings in San Jose. Compl. ¶¶ 36-38. McClure also claims that he reported the alleged misconduct, and that CEO Stelfox confronted Waldschmidt, in San Jose. *Id.* ¶ 39. Finally, Waldschmidt allegedly made the decision to retaliate in San Jose.[4] *Id.* ¶¶ 40-43. Accordingly, because this District has a significant connection to the conduct underlying McClure's claims, McClure's choice of forum warrants some weight and deference.

Of the cases cited by the parties, this case is most like another employment case, *Gelber v. Leonard Wood Mem'l for Eradication of Leprosy*, No. C 07-01785 JSW, 2007 WL 1795746 (N.D. Cal. June 21, 2007). In that case, the court reasoned that, to the extent the "decision to terminate" plaintiff's employment was made outside of California, "the plaintiff's choice of forum is slightly diminished." *Id.* at *3. However, the court still found that the case had a "rational connection" to California because plaintiff's job performance was "also a key aspect of this case," and plaintiff "performed a significant portion of his job" in California. *Id.* Here, although McClure was terminated in Chicago, that event plays a smaller role in this case because the key events allegedly giving rise to his termination occurred elsewhere. *See* Compl. ¶¶ 36-43. Additionally, to the extent McClure's termination turned on his job performance as suggested by Panzura, McClure's

---

[3] Panzura submitted evidence that McClure primarily worked in Texas. *See, e.g.*, Clark Decl. ¶ 3, ECF No. 16 ("Plaintiff held a lease on an apartment in Texas to facilitate his performance of his Panzura-related duties and primarily worked out of Panzura's office in Plano, Texas."); *see also id.* ¶ 12 (reflecting that, in three months in 2023, McClure predominantly accessed Panzura's systems from Texas). This evidence does not undermine McClure's declaration that he spent considerable time working in San Jose, or that several key alleged events happened in San Jose.

[4] To be sure, McClure alleges a pattern of misconduct that occurred elsewhere, too – including in Texas and Chicago. Clark Decl. ¶ 12(c)-(d) (detailing events in early January 2024 that occurred in Frisco, Texas); Compl. ¶¶ 46-55 (alleging that McClure was terminated in Chicago).

1  connections to this District are also relevant.[5] These facts are sufficient to establish a significant

2  connection to this District. *See Gelber*, 2007 WL 1795746, at *3; *see also CES Grp., LLC v.

3  *DMG Corp.*, No. 14-cv-02919-BLF, 2015 WL 457405, at *3 (N.D. Cal. Feb. 3, 2015) (finding that

4  plaintiff's choice was entitled to "some weight" in patent infringement case because "one of the

5  allegedly infringing acts occurred in this district"); *cf. BioSpyder Techs., Inc. v. HTG Molecular

6  Diagnostics, Inc.*, No. 20-cv-05607-EJD, 2021 WL 242866, at *2 (N.D. Cal. Jan. 25, 2021)

7  (finding that deference to the plaintiff's choice of forum was "diminished as it chose to litigate

8  away from the forum in which it resides and because the operative facts of the dispute [did] not

9  arise in the Northern District").

10  In sum, McClure's choice of forum is entitled to some weight and deference, but not the

11  typical substantial deference that applies when the plaintiff resides in his chosen forum. This

12  factor weighs against transfer.

### 2. The convenience of the witnesses

14  "The convenience of witnesses is often the most important factor in deciding whether to

15  transfer an action." *Getz v. Boeing*, 547 F. Supp. 2d 1080, 1083 (N.D. Cal. 2008). In weighing

16  the convenience of the witnesses, the Court focuses on non-party witnesses because party

17  witnesses can be compelled to testify. *Id.* at 1084 ("The Court, however, discounts any

18  inconvenience to the parties' employees, whom the parties can compel to testify."); *see also Perez

19  v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *4 (N.D. Cal. Jan. 6,

20  2017) ("The convenience of non-party witnesses is often considered the most important factor for

21  a motion to transfer."). The Court considers both the number of witnesses and their importance to

22  the case. *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160-61 (S.D. Cal. 2005) ("[T]he court must

23  consider not simply how many witnesses each side has and the location of each, but, rather, the

24  court must consider the importance of the witnesses.").

25  McClure identifies eight non-party witnesses for which this District is the more convenient

26  forum. Jill Stelfox, Panzura's former CEO, is perhaps the most important non-party witness given

---

[5] McClure's performance of his job duties will be at issue, as Panzura claims that he was lawfully terminated for "wasteful spending and financial mismanagement." *See* Mot. to Transfer at 1, 8.

8

her direct connection to McClure's allegedly protected activity in reporting Waldschmidt's conduct, and because she was terminated along with McClure. Jill Stelfox resides in Oregon but prefers this District as it is more convenient than traveling to Texas.[6] *See* Hammell Decl. Ex. C, ECF No. 21-1. Steven Stelfox (Panzura's former IT director) resides in Oregon with Jill Stelfox and prefers this District because he and Jill can stay with their daughter, Shelby, who lives in San Jose. Steven Stelfox Decl. ¶ 11, ECF No. 21-5. Shelby Stelfox (Panzura's former human resources director) prefers this District because she resides in San Jose. Shelby Stelfox Decl. ¶ 12, ECF No. 21-4. McClure identified five other former Panzura employees who are located in California. McClure Decl. ¶ 22. McClure states that these former employees could offer valuable testimony corroborating Waldschmidt's angry reaction to being confronted by CEO Stelfox. *Id*. According to McClure, these witnesses could also testify that he "had proper fiscal policies in place and did not commit financial malfeasance." *Id*.

Panzura identifies six non-party witnesses for which Texas would be the more convenient forum. Bryan Jorgensen, the Jones Day attorney with whom McClure consulted about Waldschmidt's alleged misconduct, is "based in Dallas, Texas." Clark Decl. ¶ 13(f) & Ex. 3, ECF No. 16-3. The other witnesses are former employees who "reside within 100 miles of Plano" and "can attest to [McClure's] wasteful corporate spending and financial mismanagement." Clark Decl. ¶ 13(g). But Panzura has not explained why testimony from five former employees on the same subject is necessary and non-cumulative, and party witnesses may be able to testify to the same issues. For example, presumably Panzura's board members and others involved could testify to the company's reasons for terminating McClure.

With respect to Panzura's party witnesses, they are scattered across different locations – one is in California, and others are in Texas or Illinois. *Id.* ¶ 13. The junior female employee "works remotely from California but travels regularly to Panzura's office in Plano, Texas." *Id.* ¶ 13(h). These witnesses are least significant to the Court's analysis because Panzura can compel them to testify. *Gelber*, 2007 WL 1795746, at *3.

---

[6] Jill, Steven, and Shelby Stelfox are also pursuing their own case against Panzura in Santa Clara County Superior Court. Clark Decl. Ex. 1, ECF No. 16-1.

The Court concludes that, on balance, this District is the more convenient forum for more of the key non-party witnesses. McClure has offered a more compelling explanation for why the non-party witnesses he intends to call – especially former CEO Stelfox – are essential to the litigation. Panzura has identified some non-party witnesses located in Texas but has not shown that these witnesses are important to the litigation or that they would offer non-cumulative testimony. The location of party witnesses, which is less important to this analysis, is mixed given the witnesses' varied locations. Accordingly, McClure has shown that transfer "would in fact inconvenience key non-party witnesses" and Panzura has not met its "affirmative burden to demonstrate that party and non-party witnesses would be less inconvenienced" if the case is transferred. *CES Grp.*, 2015 WL 457405, at *3. Therefore, this factor weighs against transfer.

### 3. The convenience of the parties and their contacts with the forum

The Court also considers the extent of the parties' contacts with the forum, "including those relating to [plaintiff's] cause of action." *Pac. Car*, 403 F.2d at 954. The parties' contacts with the forum may reflect the extent to which this District is convenient for the parties, and whether this District has a "particular interest" in the litigation. *Id.* The Court addresses Panzura's contacts with this District and then McClure's contacts in turn.

As discussed above, Panzura has some contacts with this District that are directly related to the events underlying McClure's claims. *See supra* Section II.B.1. However, the parties dispute the extent of Panzura's other contacts with this District, and they submit competing evidence on this issue. McClure contends that San Jose has been Panzura's "primary place of business, base of operations, and primary headquarters" since December 2022. McClure Decl. ¶ 4; *see also* Compl. ¶ 21. McClure's employment contract from 2022 reflects that the company was located in San Jose. Compl. ¶ 20. McClure also submitted a June 2024 business search record from the California Secretary of State reflecting Panzura's "Principal Address" is in San Jose. Hammell Decl. Ex. B, ECF No. 21-1; *see also* McClure Decl. ¶ 25. According to McClure, Panzura's location in Plano, Texas is a "satellite office" that the company opened to facilitate meetings during the Covid-19 pandemic. McClure Decl. ¶ 7. By January 2024, McClure and CEO Stelfox had planned to fully sublease the Plano, Texas office because "so few Panzura employees were

10

coming in to work from that office." *Id.* McClure also submitted declarations from former CEO Stelfox and former human resources director Shelby Stelfox corroborating his account. Jill Stelfox Decl. ¶¶ 7, 10, 13, ECF No. 21-3; Shelby Stelfox Decl. ¶ 10.

Panzura contends that, although the company was headquartered in San Jose until "early 2022," its "operations have been moved to Texas." Clark Decl. ¶ 4. Since 2022, the Plano, Texas office "has been Panzura's largest office, and the San Jose office has been considered a satellite." *Id*. ¶ 5. Many of Panzura's executives and officers also reside in Texas. *Id*. ¶¶ 7-9. Panzura has reportedly "closed its California office to employees and will not renew its San Jose lease, which expires in 2025." Clark Reply Decl. ¶ 5, ECF No. 23-1. Panzura does not dispute that it "intends to downsize its current 10,299 square feet office space" in Plano, Texas, but it intends to "maintain its headquarters in Texas. *Id*. ¶ 16.

Although the parties offer conflicting accounts of Panzura's current headquarters, the evidence reflects that Panzura had meaningful contacts with this District for at least part of the relevant period, and it maintains some presence here. Accordingly, this District has an interest in the parties' dispute. Panzura has also submitted evidence reflecting that the company's contacts with this District are diminishing, and that it has stronger contacts with the Eastern District of Texas. This evidence supports that litigating in this District may be less convenient for Panzura.

For McClure, this District is more convenient. Although McClure lives in Alabama, he has "many friends" who could host him when he comes to this District. McClure Decl. ¶ 23. Additionally, McClure's counsel is based in California and is not licensed to practice in Texas; it would be "inconvenient and costly" for McClure to retain new counsel for litigation in Texas. *Id.* ¶ 24. Panzura argues that the convenience of McClure's counsel is irrelevant because the inquiry focuses on the convenience of the parties. Reply at 5, ECF No. 23. But the Court may consider how transfer would affect McClure's costs because of his need to retain new counsel. *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *10 (N.D. Cal. Dec. 9, 2014).

Ultimately, the evidence weighs both for and against transfer. McClure has established that its preferred forum would be more convenient for it, and McClure has established that this District would be more convenient for him. The Court may not transfer this action if the result

11

would be to shift the inconvenience from one party to another. *Van Dusen*, 376 U.S. at 645-46. Additionally, the Court may consider the relative resources of the parties in evaluating the convenience of the parties. *Gelber*, 2007 WL 1795746, at *4. Considering McClure's relatively limited resources, this factor weighs slightly against transfer.

### 4. The interests of justice

Courts may consider "public interest factors such as court congestion, the local interest in deciding local controversies, conflicts of laws, and burdening citizens in an unrelated forum with jury duty." *Arreola*, 2014 WL 6982571, at *11.

Here, it is not meaningfully disputed that the Eastern District of Texas is less congested than this District. Panzura submitted statistics reflecting that the median time from filing a case to trial in this District is 35.7 months, but just 20.7 months in the Eastern District of Texas. Opp. to Mot. to Transfer at 11. This evidence favors transfer. *Arreola*, 2014 WL 6982571, at *11. By contrast, California's interest in the case weighs against transfer. California has a public policy interest in the enforcement of FEHA and the other employment laws at issue. *See* Opp. to Mot. to Transfer at 29-30. Additionally, "this forum is more familiar with the claims brought under California law." *Cedillo v. Transcor Am., LLC*, No. C 13-01580 SI, 2013 WL 4565826, at *4 (N.D. Cal. Aug. 27, 2013).

In sum, there are considerations for and against transfer. This factor is neutral.

### 5. Other factors

The Court finds that other potential factors do not tip the balance either in favor or against transfer. The ease of access to evidence typically is not a significant favor given advances in electronic discovery, and that holds true here. *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 780 (N.D. Cal. 2014) ("Nevertheless, in this type of case where electronic discovery is the norm (both for electronic information and digitized paper documents), ease of access is neutral given the portability of the information."). And the ability to consolidate this case with others is neutral. Although former CEO Stelfox and her family members have brought similar claims in Santa Clara County Superior Court, the two cases cannot be consolidated. Opp. to Mot. to Transfer at 30 n.10; Clark Decl. Ex. 1.

### 6. Weighing the factors

Overall, McClure's choice of forum and the convenience of the witnesses – the most important factor – weigh against transfer. The convenience of the parties and their contacts with this District are neutral, but slightly weigh against transfer given McClure's more limited resources. The interests of justice are neutral. Although transfer would be more convenient for Panzura, that is not sufficient to outweigh the other considerations discussed above. Therefore, Panzura has not met its burden to demonstrate that convenience and the interest of justice favor transfer.

For the foregoing reasons, Panzura's motion to transfer is DENIED.

## III. MOTION TO DISMISS

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

If the court finds that dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

13

**B.     Discussion**

Panzura moves to dismiss all McClure's claims on varying grounds. The Court addresses Panzura's arguments below.

### 1.     Retaliation claims (Counts 1, 2, and 4)

Panzura moves to dismiss McClure's retaliation claims under California Labor Code § 1102.5 (Count 1), FEHA (Count 2), and Title VII (Count 3) for failure to allege that McClure engaged in protected activity and that his termination was causally related to that activity. Mot. to Dismiss at 8-13.

With respect to Count 1, the Court concludes that McClure has plausibly alleged a violation of California Labor Code § 1102.5(b), which prohibits retaliation against an employee for disclosing information "if the employee has reasonable cause to believe that the information discloses a violation." The plaintiff must identify a specific law that he believes was violated. *Nejadian v. County of Los Angeles*, 40 Cal. App. 5th 703, 706, 719 (2019). Here, McClure alleges that he reasonably believed Waldschmidt's conduct violated at least the Equal Pay Act by petitioning for more favorable compensation for the junior female employee relative to her male counterparts. Compl. ¶¶ 30-42. McClure also alleges that he reasonably believed Waldschmidt engaged in unlawful quid-pro-quo sexual harassment and created a hostile work environment. *See id* ¶¶ 32, 35, 39, 41, 45. Finally, McClure alleges that he believed Waldschmidt was embezzling company funds for personal use with the junior female employee. *See id.* ¶¶ 27, 31, 39, 46.

Panzura contends that McClure did not have an objectively "reasonable cause" to believe that this conduct was unlawful. Mot. to Dismiss at 6. This argument ignores the detailed allegations in the complaint. For example, as to quid-pro-quo sexual harassment, McClure alleges that the junior female employee petitioned McClure to give her a "more generous commissions package than her male peers" and told McClure that Waldschmidt "had promised her a change to her commission structure." Compl. ¶¶ 32, 36, 39. McClure also alleges that Waldschmidt improperly interfered to prevent the junior female employee's termination multiple times, and then promoted her after he became CEO. *Id.* ¶¶ 30, 42, 61. Whether McClure had an objectively reasonable belief that this conduct violated the law is a question that this Court cannot resolve

14

1  against McClure at this early stage. The Court must assume McClure's well-pleaded factual
2  allegations are true, *Manzarek*, 519 F.3d at 1031, and he has alleged sufficiently detailed facts to
3  support his claim.

4  Panzura also argues that McClure's reporting is not protected activity because it
5  "concerned an internal personnel matter," not unlawful activities. Mot at 6. This argument also
6  raises a premature factual question. Panzura cites several cases holding that complaints about
7  internal personnel matters are not protected whistleblowing. *See id.* at 8. But these cases were
8  decided at summary judgment or after trial, and they dealt with disclosures of administrative
9  matters instead of conduct that could be reasonably viewed as violating the law. *See Rodriguez v.*
10 *Lab'y Corp. of Am.*, 623 F. Supp. 3d 1047, 1054-55 (C.D. Cal. 2022) (holding that disclosure of
11 concerns about "lack of hand sanitizer and soap" at a prison, and procedures for dealing with
12 blood contamination, were internal personnel matters); *Carter v. Escondido Union High Sch. Dist.*,
13 148 Cal. App. 4th 922, 933-34 (2007) (holding that "disclosing to the athletic director that [a
14 coach] had recommended a protein shake to a student is not protected by section 1102.5"); *Patten*
15 *v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384-85 (2005) (holding that
16 disclosure of unauthorized use of public funds was whistleblowing, but reports about "an off-color
17 remark" were not).

18 Based on these same arguments, Panzura contends that McClure fails to allege that he
19 engaged in protected activity under Title VII and FEHA. Mot. to Dismiss at 8-9, 11. Panzura
20 contends that McClure's "alleged opposition was not directed to Panzura's employment practices,
21 but to a 'sexual relationship' between co-workers." *Id*. at 9. This argument requires the Court to
22 make inferences against McClure and to accept Panzura's characterization of disputed facts.
23 Whether Waldschmidt's alleged favoritism toward the junior female employee was "isolated" or
24 whether it was sufficiently "severe or persuasive" to create a hostile work environment is a fact-
25 bound inquiry that the Court cannot resolve at this stage. The cases cited by Panzura underscore
26 this point. *See, e.g.*, *Miller v. Dep't of Corrections*, 36 Cal. 4th 446, 451, 464-67 (2005)
27 (addressing at the summary judgment stage the circumstances under which favoritism may create
28 a hostile work environment or sexual discrimination).

Panzura also argues that McClure fails to establish a causal nexus between his alleged protected activity and his termination. Mot. to Dismiss at 11-13. McClure responds that he plausibly alleges a so-called "cat's paw" theory of causation – *i.e.*, that Waldschmidt influenced the Panzura board to terminate McClure in retaliation for his whistleblowing.[7] Opp. to Mot. to Dismiss at 25, ECF No. 26. The Court agrees that McClure plausibly alleges causation under this theory. McClure alleges that he was terminated in January 2024, less than one month after McClure and CEO Stelfox confronted Waldschmidt. Compl. ¶¶ 42-43, 55. Panzura contends that it is implausible that Waldschmidt "could wield such influence on Panzura Board Members." Reply at 10. But McClure alleges that Waldschmidt was a co-founder and partial owner of the company, and that he also served on Panzura's board of directors. Compl. ¶ 22. Moreover, Waldschmidt was promoted to CEO just days after Stelfox and McClure were fired. *Id.* ¶¶ 60-61. Based on these allegations, it is reasonable to infer that Waldschmidt could yield influence in the company to cause McClure's termination. The cases cited by Panzura are inapposite. *Benton-Flores v. Santa Barbara Unified Sch. Dist.*, No. 19-cv-06424-JFW (SP), 2022 WL 17742549, at *10 n.10 (C.D. Cal. Sept. 19, 2022) (rejecting cat's paw theory because plaintiff did not "allege any facts to support it"); *Rubadeau v. M.A. Mortenson Co.*, No. 13-CV-339 AWI JLT, 2013 WL 3356883, at *10 (E.D. Cal. July 3, 2013) ("The FAC is silent about the knowledge of, or influence over, the relevant decision maker(s).").

Accordingly, the Court DENIES Panzura's motion to dismiss Counts 1, 2, and 4.

### 2. Failure to prevent retaliation (Count 3)

It is unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). Panzura argues that this claim fails because McClure does not allege "a viable underlying retaliation claim." Mot. to Dismiss at 13. However, as discussed above, McClure plausibly alleges retaliation claims. *See supra* Section III.B.1. Additionally, McClure plausibly alleges that Panzura failed to take

---

[7] The "cat's paw" nomenclature derives from a fable in which a monkey manipulates an unwitting cat to do its bidding by retrieving chestnuts from a fire. *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 n.1 (2011). In the context of employment discrimination, a "cat's paw" case is one in which an employee influences an unwitting decision maker to take adverse action against another employee.

16

1  reasonable steps to prevent retaliation, *see* Mot. to Dismiss at 13-14, because he alleges that
2  Panzura failed to investigate the claims against Waldschmidt after the conduct was reported,
3  Compl. ¶¶ 60-61.
4        Accordingly, the Court DENIES Panzura's motion to dismiss Count 3.

      **3.      Breach of the implied covenant of good faith and fair dealing (Count 5)**

6        McClure claims that his employment contract with Panzura incorporated the covenant of
7  good faith and fair dealing, and that Panzura violated the covenant by terminating him unlawfully.
8  *Id.* ¶¶ 118-28. The "scope of conduct prohibited by the covenant of good faith is circumscribed by
9  the purposes and express terms of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal.,*
10 *Inc.*, 2 Cal. 4th 342, 373 (1992) (in bank) (citations omitted). Therefore, the implied covenant
11 cannot require action that contradicts the rights and obligations set forth by a contract's express
12 terms. *Id.* at 373-74; *see also Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal.
13 2015) ("Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair
14 dealing, because 'if defendants were given the right to do what they did by the express provisions
15 of the contract there can be no breach.'" (quoting *Carma*, 2 Cal. 4th at 374)).
16       Panzura argues that it did not violate the covenant of good faith and fair dealing because
17 McClure was an at-will employee, and therefore he could be terminated without cause. Mot. to
18 Dismiss at 14; Compl. Ex. A ¶ 7 (reflecting that McClure's employment was "at will"). Panzura
19 argues that its decision to terminate McClure did not breach "a substantive contract provision,"
20 and thus McClure's termination was "not precluded by the covenant" of good faith and fair
21 dealing. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349-50 (2000); *Lenk v. Monolithic Power Sys.,*
22 *Inc.*, No. 15-cv-01148-NC, 2015 WL 7429498, at *5-6 (N.D. Cal. Nov. 23, 2015).
23       In his opposition, McClure confusingly re-characterized this claim as one for "breach of
24 contract as to contractual anti-retaliation terms that are incorporated into Plaintiff's employment
25 contract by operation of law." Opp. to Mot. to Dismiss at 30. However, McClure did not identify
26 any contractual provision that prevented Panzura from terminating him. At the hearing, McClure
27 conceded that this claim may be dismissed with prejudice, as it is duplicative of other claims.
28       Accordingly, the Court GRANTS Panzura's motion to dismiss Count 5 with prejudice.

17

#### 4. Wrongful termination in violation of public policy (Count 6)

A claim for wrongful termination in violation of public policy requires that the defendant "violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." *Turner v. Anheuser-Busch, Inc.,* 7 Cal. 4th 1238, 1256 (1994). The parties agree that this claim is derivative of the retaliation claims. *See, e.g.*, Mot. to Dismiss at 15 ("McClure's wrongful termination claim is thus derivative of his defective retaliation claims."). Because McClure's retaliation claims will proceed, so too does the wrongful termination claim.

Panzura also argues that McClure failed to allege a public policy that has been violated, *id.* at 14-15, but McClure plausibly alleges that Panzura's conduct violates Title VII and FEHA. *See* Compl. ¶ 132. This is sufficient to state a claim. *See, e.g., Zamora v. Sec. Indus. Specialists, Inc.*, 71 Cal. App. 5th 1, 31 (2021) ("The FEHA's provisions may provide the policy basis for a claim for wrongful termination in violation of public policy.").

Accordingly, the Court DENIES Panzura's motion to dismiss Count 6.

#### 5. Violation of the Unfair Competition Law (Count 7)

The Unfair Competition Law ("UCL") prohibits "unlawful," "unfair," and "fraudulent" business acts and practices. Cal. Bus. & Prof. Code § 17200. Panzura argues that the UCL claim must fail because it is premised on McClure's "other, deficient claims." Mot. to Dismiss at 15. However, because McClure has plausibly alleged violations of Title VII and FEHA, he has also stated a UCL claim under the UCL's "unlawful" prong.

Panzura also argues that "the UCL's remedies are unavailable to McClure." *Id*. at 16. Here, the available remedies are restitution and injunctive relief. *See Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009). McClure "concedes that his claim for restitution in the form of future lost wages" is "not available" under the UCL, and thus his claim for restitution "may be dismissed." Opp. to Mot. to Dismiss at 31. Panzura argues that McClure lacks standing to pursue injunctive relief on his own behalf because he is a former employee, and thus he will not be personally affected by Panzura's employment practices in the future. Mot. to Dismiss at 16. McClure concedes that he lacks Article III standing to pursue injunctive relief in federal court but

argues that he could pursue injunctive relief under his UCL claim in state court. Opp. to Mot. to Dismiss at 31-32. Thus, McClure asks for his UCL claim to be dismissed without prejudice to refiling it in state court, or alternatively, that the Court remand the UCL claim. *Id*. at 31-32.[8] In its reply, Panzura did not directly address whether dismissal without prejudice, or partial remand, would be appropriate.

The Court concludes that McClure's UCL claim should be severed from this action and remanded to Santa Clara County Superior Court. McClure plausibly alleges a UCL claim, but this Court lacks subject matter jurisdiction due to McClure's lack of Article III standing with respect to injunctive relief – his only available remedy. Although Article III standing is a requirement for litigating in federal court, "state courts are free to experiment with remedies that federal courts may not entertain" and McClure's "lack of standing in federal court does not prevent California courts from hearing requests for public injunctions." *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 920 (N.D. Cal. 2020) (citation omitted). In similar circumstances, courts have severed and remanded individual claims to state court. *See id.* at 919-21; *see also Harry v. Wedbush Sec. Inc.*, No. 24-cv-00484-HSG, 2024 WL 3297070, at *3-4 (N.D. Cal. July 2, 2024), *appeal filed*, No. 24-4755 (9th Cir. Aug. 2, 2024). "As a general rule, if the district court is confronted with an Article III standing problem in a removed case . . . the proper course is to remand for adjudication in state court." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.6 (9th Cir. 2018); *see also Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter."). In this case, dismissal without prejudice or remand would achieve the same result, but remand would avoid duplication of state court proceedings.

Accordingly, the Court SEVERS Count 7 from this action and REMANDS it to Santa Clara County Superior Court.

---

[8] McClure originally filed this action in Santa Clara County Superior Court. Compl. at 1. Panzura removed the case, invoking federal question jurisdiction with respect to the Title VII claim and supplemental jurisdiction with respect to all other claims. Notice of Removal ¶¶ 4-5, ECF No. 1.

## IV. CONCLUSION

For the foregoing reasons, Panzura's motion to transfer is DENIED. Panzura's motion to dismiss is GRANTED as to Count 5, which is dismissed with prejudice. Panzura's motion to dismiss is DENIED as to Counts 1, 2, 3, 4, and 6. Count 7 is SEVERED from this action and REMANDED to Santa Clara County Superior Court.

McClure shall file an amended complaint within 21 days of this Order. Panzura shall file its answer within 21 days after McClure files the amended complaint. The parties previously stipulated to extend the deadline to complete an initial ADR session to 30 days after the Court's ruling on Panzura's motions. Stip., ECF No. 48. The Court hereby further extends the deadline to complete an initial ADR session to May 23, 2025. The parties shall file a status report on their ADR efforts by May 30, 2025.

**IT IS SO ORDERED.**

Dated: March 25, 2025

Eumi K. Lee
United States District Judge